# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHYLLIS OLIVER,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **No. 10-7493** |
| | : | |
| **v.** | : | |
| | : | |
| **CLINICAL PRACTICES OF THE** | : | |
| **UNIVERSITY OF PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                   **February 4,  2013**

Plaintiff, Phyllis Oliver, has brought suit against Defendants, Clinical Practices of the University of Pennsylvania ("CPUP"), Presbyterian Medical Center of the University of Pennsylvania Health System and Penn Presbyterian Medical Center, alleging discrimination on the basis of race, disability and age.[1]

Before the Court is Defendants' Motion for Summary Judgment.  For the reasons set forth below, the motion will be granted.

---

[1] Plaintiff brings these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq. ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA") and the Pennsylvania Human Relations Act, 43 P.S. § 955(a), et seq. ("PHRA").  We note that, because Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts, see e.g., Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002), our analysis as to the individual claims of federal discrimination will also encompass Plaintiff's PHRA claim.

1

# I.    FACTUAL AND PROCEDURAL HISTORY

Unless otherwise indicated, the following facts are undisputed[2]:

On October 18, 2006, Plaintiff began working for CPUP as a full-time patient service representative in the Department of Surgery at Penn Presbyterian Medical Center. Her duties included greeting patients, scheduling appointments, answering phones, collecting patient insurance cards and pulling charts. Plaintiff was also responsible for opening the doors for the arrival of patients and certain phone operations. During different time periods, Plaintiff's supervisors were either Iris Bryant, Loren Gleason or Lori Hulse.[3] (Defs.' Statement of Undisputed Facts ¶¶ 1, 3-4, 7, 10-12.)

Throughout her employment, Plaintiff was subject to CPUP's policies, including a constructive discipline policy and performance improvement and progressive steps policy.[4] The

---

[2] In response to a number of the paragraphs in Defendants' Statement of Undisputed Facts, Plaintiff denies the paragraph outright or denies it as stated without providing proper factual support for the denial. Specifically, Plaintiff denies some paragraphs because she disagrees with the perception of others and denies as stated many other paragraphs on the basis that Defendants' description takes portions of deposition testimony out of context. In either case, however, Plaintiff does not state facts that contradict the facts described by Defendants. (See, e.g., Pl.'s Resp. in Opp'n to Defs.' Statement of Undisputed Facts ¶¶ 27-28, 86.) We do not consider Plaintiff's unsubstantiated responses to create a factual dispute for the purpose of our analysis. Waris v. HCR Manor Care, 2009 WL 330990, at *1 n.2 (E.D. Pa. Feb. 10, 2009); Robin Constr. Co. v. U.S., 345 F.2d 610, 613 (3d Cir. 1965) ("Mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment.") (internal quotation marks omitted).

[3] Plaintiff was supervised by Bryant from October 18, 2006 through April 2008, Gleason from April 2008 through June 16, 2008 and Hulse from June 16, 2008 through September 8, 2008. (Defs.' Statement of Undisputed Facts ¶¶ 7, 9-11.)

[4] We note that the performance improvement and progressive steps policy, which integrated CPUP's previous policies regarding progressive discipline, went into effect on January 1, 2008. (Defs.' Statement of Undisputed Facts ¶ 40.)

former policy requires, among other things, the termination of an employee who intentionally causes harm to employees, patients or visitors. The latter policy provides for progressive steps for performance improvement, beginning with a "Coaching,"[5] then a "First Written Warning,"[6] "Second Written Warning,"[7] and "Final Warning."[8] This policy also sets out an illustrative list of grounds for termination.[9] (Id. ¶¶ 16-17, Ex. K, at 3, Ex. L, at 4-7.)

In January 2007, Plaintiff was diagnosed with colon cancer and underwent treatment at Penn Presbyterian Medical Center. After her surgery, Plaintiff applied for and was granted a leave of

---

[5] "Coaching is an ongoing, informal process through which the manager articulates, models and reinforces expected performance, and addresses (a) performance deficiencies, (b) violations of rules, policies, safety practices and standards of professional conduct, and (c) attendance and lateness infractions." (Defs.' Statement of Undisputed Facts Ex. L, at 4.)

[6] "[The First Written Warning] is initiated by the manager in the event of ongoing performance problems, more serious violations, recurrence of prior violations, or persistence of attendance or lateness infractions." (Defs.' Statement of Undisputed Facts Ex. L, at 4.)

[7] "[The Second Written Warning] is initiated by the manager in the event of persistent performance problems following a First Written Warning during the preceding twelve month period . . . . At the Second Written Warning phase, the employee is notified that the next progressive step will be nothing less than a Final Warning that any further performance deficiency or violation of any kind or magnitude will result in termination of employment." (Defs.' Statement of Undisputed Facts Ex. L, at 5.)

[8] "[The Final Warning] step is taken in the event that, after thorough investigation, the manager determines that performance deficiencies, violations of rules, policies, safety practices or standards of professional conduct, or attendance or lateness infractions, have not been rectified, or that the employee has committed a very serious violation." (Defs.' Statement of Undisputed Facts Ex. L, at 5.)

[9] The policy states that, "[i]n the event that (a) an employee engages in an egregious violation or reckless behavior with respect to a work rule, policy or professional standard of conduct, or (b) notwithstanding improvement efforts, (i) the employee's performance remains deficient, (ii) serious violations or infractions by the employee continue to occur or (iii) absence or lateness infractions persist, then termination of employment is the appropriate step in this process." (Defs.' Statement of Undisputed Facts Ex. L, at 6.)

absence. Plaintiff returned to work in March 2007. (Id. ¶¶ 112-13, 117, 121.)

During the course of her employment, Plaintiff received several verbal and written warnings and reprimands for violating CPUP's policies. For example, Plaintiff received verbal reprimands from Bryant for eating at the front desk. In addition, Bryant admonished Plaintiff for lateness and left post-it notes on Plaintiff's computer that said "see me" when she was late. Plaintiff contends that her white co-workers were not disciplined for committing the same or similar violations. Plaintiff was also issued numerous written warnings from Bryant for absenteeism.[10] As a result of these absences, Plaintiff's discipline level was raised to the "Second Written Warning" level. Plaintiff also received a "Coaching Record" from Hulse in June 2008, after a doctor reported that he had witnessed Plaintiff addressing a colleague in a rude tone and derogatory manner. (Id. ¶¶ 23-25, 31, 36, 40, 57, 65, 70, 74.)

On September 8, 2008, Hulse terminated Plaintiff after an interaction between Plaintiff and a patient, Mr. Grecu, in which the patient became visibly upset. Defendants advised Plaintiff by letter that she was being terminated because she was on a "Second Written Warning" and because of the severity of the incident with the patient, which Defendants deemed a violation of the standards of professional conduct and offensive and inappropriate behavior. Plaintiff contends that she was falsely accused of being argumentative with the patient. (Id. ¶¶ 82, 99-101.)

_____

[10] Plaintiff received written warnings from Bryant on July 24, 2007, September 12, 2007 and December 21, 2007 regarding thirteen unexcused absences. The December 21, 2007 warning explained that Penn was integrating its progressive discipline policies as of January 1, 2008, and that Plaintiff's discipline level under the new policy would be the "Second Written Warning" level. Plaintiff also received two "Final Warnings" from Gleason and Hulse after unscheduled absences in May 2008 and June 2008. However, because Plaintiff subsequently received retroactive intermittent leave under the Family and Medical Leave Act ("FMLA"), these warnings were removed from Plaintiff's record. (Defs.' Statement of Undisputed Facts ¶¶ 25, 31, 36, 40-41, 45, 49-51.)

On March 5, 2009, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging discrimination on the basis of race, age and disability. After receiving a right to sue letter, Plaintiff initiated the instant case. On August 29, 2011, Defendants filed their Motion for Summary Judgment. The matter is now ripe for disposition. (Id. ¶¶ 142, 148; Compl. ¶ 11.)

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. Kaucher v. Cnty of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" it if might affect the outcome of the case under governing law." Id. (citing Anderson, 477 U.S. at 248). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving

party's initial <u>Celotex</u> burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." <u>Id.</u> at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A). Only evidence which is admissible at trial may be considered in ruling on the motion. <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J. 1995).

## III.   <u>DISCUSSION</u>

### A.   **Timeliness of Plaintiff's Claims Against Iris Bryant**

Defendants first argue that Plaintiff's claims of discrimination and harassment by Iris Bryant, which occurred more than 300 days before Plaintiff filed a charge of discrimination, should be dismissed as untimely.

A charge of discrimination that arises in Pennsylvania must be filed within 300 days after the alleged unlawful employment practice occurred. <u>Bullock v. City of Phila.</u>, 250 Fed. Appx. 512, 514 (3d Cir. 2007). Here, it is undisputed that Plaintiff filed a complaint with the PHRC on March 5, 2009. Thus, only those claims which occurred within the prior 300 days, or after approximately May 8, 2008, are actionable. Plaintiff's claims of discrimination against Iris Bryant, however, occurred between March 2007—when Plaintiff returned from her surgery—and April 2008—when Bryant left

the Department of Surgery. Because more than 300 days had passed before Plaintiff filed her charge of discrimination, her claims against Bryant are barred absent some exception to the 300-day rule.

One such exception is the continuing violation theory, which Plaintiff asserts is applicable here. Under this theory, an act that falls outside the applicable limitations period may be deemed timely if a plaintiff shows that: (1) it is part of an "ongoing practice or pattern of discrimination" by the defendant; and (2) the "last act evidencing the continuing practice falls within the limitations period." Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997); Shenkan v. Potter, 71 Fed. App'x. 893, 895 (3d Cir. 2003); see also West v. Phila. Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995) ("Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory, . . . the 300-day filing period becomes irrelevant . . . ."). To establish an ongoing pattern, a plaintiff must demonstrate "more than the occurrence of isolated or sporadic acts of intentional discrimination." Id. at 755 (quoting Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981)).

Before examining the specific acts in question, we generally observe that much of the conduct Plaintiff points to regarding Bryant seems to pertain to her displeasure with how she was treated. However, "Title VII is not a shield against harsh treatment at the work place; it protects only in instances of harshness disparately distributed." Jackson v. City of Killen, 654 F.2d 1181, 1186 (5th Cir. 1981).

We also note that in employment cases, the continuing violation analysis typically arises in the context of hostile work environment claims. Here, while Plaintiff has raised a hostile work environment claim in her response in opposition to Defendants' motion for summary judgment, we note that she points to the conduct of Bryant—not her other supervisors—to support this claim.

(Pl.'s Br. 8-17.) Indeed, it was not until Plaintiff's sur-reply that she attempted to demonstrate a connection between the actions of Bryant and those of Gleason and Hulse so as to warrant the operation of the continuing violation doctrine.

That said, the facts alleged by Plaintiff to establish her continuing violation theory are as follows: Plaintiff contends that, during the limitations period, she was subjected to intense supervision and treated unfairly by her supervisors, Loren Gleason and Lori Hulse. Plaintiff claims that Gleason sent an email to Human Resources on June 23, 2008 in which she indicated a desire to terminate Plaintiff based on Plaintiff's recent absence and Gleason's belief that Plaintiff was causing "other good employees to look for jobs." Plaintiff argues that both reasons for Gleason's desire to terminate her were unfounded. Plaintiff further contends that, on June 23, 2008, after Hulse became Plaintiff's supervisor, she was issued a "Coaching Record" regarding an argument with her white co-worker, Shannon Maratea. Plaintiff asserts that Hulse did not discipline Maratea for the incident. Finally, Plaintiff asserts that Hulse falsely accused her of being argumentative with a patient and then wrongfully terminated her on September 8, 2008. (Pl.'s Sur-Reply Br. 2-5.) Assuming at least one of these alleged acts was part of a pattern of discrimination, Plaintiff has satisfied her burden of showing an act within the limitations period.[11]

The remaining issue is whether Plaintiff has demonstrated an "ongoing practice," that is "more than the occurrence of isolated or sporadic acts of intentional discrimination." West, 45 F.3d at 755. In making its determination, a court must closely scrutinize the claims that occurred within

_____

[11] Plaintiff argues that Bryant's actions are not time-barred so long as there is evidence of discriminatory conduct towards Plaintiff after Bryant resigned. (Pl.'s Sur-Reply 3.) This misstates the law. In order for the continuing violations doctrine to apply, there must be evidence that the last act of the continuing practice—not just any discriminatory practice—occurred within the limitations period. Rush, 113 F.3d at 481.

and outside of the limitations period to assess if they are properly related. Rush, 113 F.3d at 484-85. If an act outside the statutory period bears no relation to the actions that were timely raised, then the doctrine does not apply and the employee cannot recover for the earlier acts. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002). In undertaking this analysis, factors to consider include, but are not limited to: (1) subject matter, or whether the acts constitute the same type of discrimination, tending to connect them in a continuing violation; and (2) frequency, or whether the acts are recurring or more in the nature of isolated incidents.[12] Id. at 755 n.9. Acts that are taken by two different supervisors, acting independently, over different time periods generally demonstrate isolated events rather than a persistent, ongoing pattern of discrimination. Ferguson v. Merck & Co., Inc., 2008 WL 205224, at *18 (E.D. Pa. Jan. 23, 2008).

Here, Plaintiff urges that the following conduct by Bryant, which occurred outside the limitations period, is nonetheless actionable as part of an ongoing pattern of targeting Plaintiff for disparate disciplinary treatment compared to her white co-workers. Plaintiff first contends that Bryant reprimanded her and/or issued written warnings for eating food at the front desk and for coming in late and/or calling out sick while she was recovering from colon cancer, but did not reprimand or write up many of the white employees for engaging in the same conduct or for violating other policies. In addition, Plaintiff alleges that Bryant targeted her by placing post-it notes on her computer stating "see me" for everyone to see, and asking other workers to monitor her arrival time for work. Plaintiff further claims that Bryant was informed that Plaintiff's white co-worker, Shannon

---

[12] We note that the United States Court of Appeals for the Third Circuit's recent decision in Mandel v. M&Q Packaging Corp., 2013 WL 141890 (3d Cir. Jan. 14, 2013), makes clear "that there is no longer a permanency requirement under the continuing violation doctrine." Id. at *6. Thus, we do not consider West's "permanence" factor in reaching our decision.

9

Maratea, accessed Plaintiff's medical records without authorization, but did not report the incident to Human Resources or perform an investigation. Lastly, Plaintiff alleges that, after her colon cancer surgery, she was treated differently by Bryant. For example, Bryant made a comment about Plaintiff being slow and indicated to Plaintiff that she should think about looking into the University for another job.[13] (Pl.'s Br. 11-17.) Plaintiff contends that the continuing violation doctrine applies to these claims because there were "ongoing instances of discrimination" after Bryant left the Department of Surgery.

We disagree and conclude that the continuing violation theory does not apply. Although Plaintiff attempts to connect the actions of each of her supervisors to establish one unlawful employment practice, we do not find Bryant's actions sufficiently related to those of Gleason and Hulse to constitute a continuing pattern.

In reaching this conclusion, we first note that the alleged discriminatory acts asserted both within and outside of the applicable statutory period are somewhat vague, and primarily amount to various complaints about how Plaintiff was treated by her three supervisors. To the extent it is discernible, it appears that Bryant's alleged conduct relates more to a hostile work environment claim, whereas the alleged conduct of Hulse falls under the auspices of a wrongful termination claim. Further, Gleason's alleged conduct—her composition and submission of an email to Human Resources—does not appear to fit into any specific claim. Plaintiff merely points to this conduct as evidence of pretext to support her disparate treatment claims. Therefore, while the conduct primarily relied upon by Plaintiff broadly involves disciplinary actions against her, the acts of Plaintiff's three

---

[13] We also note that Plaintiff has asserted that several employees stated that Bryant treated white employees more favorably than black employees and/or there was racial polarization in the office. (Pl.'s Br. 8-10.)

supervisors are not sufficiently similar to constitute a persistent, ongoing pattern.

Neither do the acts satisfy the frequency factor articulated in West. Regarding frequency, the Third Circuit has not "set a specific standard for determining how close together the acts must occur to amount to a continuing violation." Cowell v. Palmer Tp., 263 F.3d 286, 295 (3d Cir. 2001). Nevertheless, courts should consider the time gap between incidents and the number of incidents that have occurred in reaching their conclusion. See, e.g., West, 45 F.3d at 744 (finding the alleged harassment to be frequent in that it occurred consistently over a four-year period and occurred with increased frequency during the last year); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 716 (3d Cir. 1997) (concluding that several factors, including a seven-month time gap between events, suggested that plaintiff was not subjected to a hostile work environment).

Here, Plaintiff provides no specific dates for Bryant's alleged discriminatory actions. She merely contends that "there were many instances of disparate treatment." (Pl.'s Br. 11.) Regarding reprimands for eating at the front desk, Plaintiff vaguely claims that Bryant disciplined her "often."[14] (Oliver Dep. 236:23-237:4, Pl.'s Br. Ex. A.) With respect to lateness, Plaintiff testified that Bryant would "stay on [her] every single day . . . [that she had] to get [to work] on time." (Id. at 262:8-11.) As to absenteeism, the only concrete evidence of discipline by Bryant are the written warnings issued on July 24, 2007, September 12, 2007 and December 21, 2007. (Defs.' Statement of Undisputed Facts ¶¶ 25, 31, 36.) Plaintiff also fails to provide evidence of the dates she received post-it notes, and merely indicates that she received them "every time" she was late. (Oliver Dep. 140:11-141:18.) Moreover, while Plaintiff does not give specific dates regarding Bryant's failure to report the alleged

_____

[14] In response to questions attempting to clarify what she meant by "often," Plaintiff testified that: "I can't say how many times she did it or whether she did it every day or every Monday. I don't know, but she did it." (Oliver Dep. 237:15-21.)

unauthorized access of her medical records and Bryant's alleged comments about Plaintiff being slow, her deposition testimony implies that these acts occurred around the time of her colon cancer surgery, which was in the winter of 2007. (See id. at 71:18-21, 262:6-21.)

Given Plaintiff's vague allegations, we cannot determine the exact time gap between Bryant's actions and the actions of Gleason and Hulse. Regardless, we note that, while certain incidents involving Bryant appear to have been repeated, the acts of Gleason and Hulse were three isolated events that involved different types of action or discipline. Indeed, there was no overlap in the actions of Bryant, Gleason and Hulse as each supervised Plaintiff over discrete periods of time. Nor has Plaintiff provided evidence to show that Bryant had any role in the acts taken by Gleason and Hulse. Thus, Plaintiff has not demonstrated an ongoing practice of discrimination. Accordingly, the continuing violation doctrine does not apply, and Plaintiff's claims against Bryant are time-barred.

### B.    Race Discrimination Claim - Disparate Treatment

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The PHRA also prohibits discrimination based upon "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability[.]" 43 P.S. § 955(a). Under each of these statutes, claims based upon circumstantial evidence of discrimination, such as those presented by Plaintiff, are governed by the familiar burden-shifting framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (stating that Title VII and PHRA

claims are analyzed under <u>McDonnell Douglas</u>).

Under the <u>McDonnell Douglas</u> framework, the plaintiff bears the initial burden of establishing a <u>prima facie</u> case of discrimination. <u>Sherrod v. Phila. Gas Works</u>, 57 Fed. Appx 68, 73 (3d Cir. 2003). If plaintiff successfully establishes a <u>prima facie</u> case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the unfavorable treatment. <u>McDonnell Douglas</u>, 411 U.S. at 802. Once the defendant comes forward with such a reason, plaintiff must demonstrate by a preponderance of evidence that the articulated reason was merely a pretext for intentional discrimination. <u>Id.</u> at 804.

### 1. *Prima Facie Case of Discrimination*

To make out a <u>prima facie</u> case of race discrimination, Plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) suffered the adverse action under circumstances that give rise to an inference of discrimination. <u>Brown v. Boeing Co.</u>, 468 F. Supp. 2d 729, 735 (E.D. Pa. 2007). Defendants assert that Plaintiff cannot establish the fourth element of her <u>prima facie</u> case.[15]

The fourth element focuses on whether the employer treated some people less favorably than others because of their race, color, religion, sex or national origin. <u>Pivirotto v. Innovative Sys., Inc.</u>, 191 F.3d 344, 352 (3d Cir. 1999). Plaintiff contends that she can satisfy this prong in that she was

---

[15] We note that Defendants also assert that many of Plaintiff's allegations do not rise to the level of an adverse action to satisfy the third element of her <u>prima facie</u> case. (Defs.' Br. 14.) However, as it is undisputed that Plaintiff was terminated, we find that she has sufficiently demonstrated an adverse employment action to meet her burden at this stage of the litigation. <u>See</u> <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998) (defining an adverse employment action as an action that involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

"similarly situated" to white co-workers who received more favorable treatment. (Pl.'s Br. 20-21.)
Under this approach, a plaintiff must be similarly situated in all relevant respects to the individuals
with whom she seeks to compare herself. Dill v. Runyon, 1997 WL 164275, at *4 (E.D. Pa. Apr.
3, 1997). Generally, this requires "a showing that the two employees dealt with the same supervisor,
were subject to the same standards, and had engaged in the same conduct without such
differentiating or mitigating circumstances as would distinguish their conduct or the employer's
treatment of them." Opsatnik v. Norfolk Southern Corp., 335 Fed. Appx. 220, 222-23 (3d Cir.
2009).

Plaintiff points to three white employees as relevant comparators.[16] Plaintiff argues that,
unlike her, these employees were not disciplined or terminated for interactions that upset or
disparaged patients. We address whether each employee is similarly situated to Plaintiff in turn.

Plaintiff first asserts that Christine Saraceno is a relevant comparator who received more
favorable treatment. Specifically, Plaintiff points to evidence that Saraceno was rude to patients, but
was not disciplined for her actions. On one occasion, a patient with whom Saraceno regularly
interacted was visibly upset about her interactions with Saraceno and met with Hulse regarding the
conduct. Plaintiff contends that Hulse did not discipline or terminate Saraceno, and later stated to
Plaintiff that the patient was "crazy." (Pl.'s Br. 20-21.)

However, Plaintiff is unable to dispute that there are differentiating circumstances that would
distinguish Hulse's treatment of Saraceno. Specifically, Plaintiff cannot dispute that Hulse did not

---

[16] We note that it is undisputed that these employees were either patient service
representatives or administrative assistants in the Department of Surgery, and reported to Lori Hulse
during the same period as Plaintiff. (Defs.' Statement of Undisputed Facts Ex. I, at ¶¶ 15, 17, 19,
Ex. Z, Ex. AA.)

witness any of Saraceno's conduct toward the patient, and that Plaintiff was not present during any conversations between Hulse and the patient or Saraceno thereafter. (Oliver Dep. 252-53.) Further, Plaintiff has not pointed to any evidence that Saraceno was at a similar disciplinary level as Plaintiff. Thus, we conclude that Plaintiff has not presented sufficient evidence for a jury to conclude that Saraceno was similarly situated.

Plaintiff next points to Angela Haswell. Plaintiff argues that two days after her termination, Mr. Grecu—the same patient with whom Plaintiff had interacted—engaged in an argument with Haswell, but Haswell was not disciplined or terminated after this interaction. Plaintiff contends that Hulse handled the situation completely different than how she handled the situation with Plaintiff. Specifically, when Hulse discussed the incident with Haswell, Hulse stated that the patient was "crazy." (Pl.'s Br. 20.)

However, Plaintiff has not presented any facts to contradict the undisputed evidence that Haswell did not engage in misconduct during her interaction with Mr. Grecu. Indeed, the record before us shows that Haswell did not yell at the patient and sought help from a supervisor when the patient became difficult. (Defs.' Statement of Undisputed Facts ¶¶ 104-05.) Therefore, Plaintiff has not sufficiently shown that Haswell is a relevant comparator.

Lastly, Plaintiff cites Deborah Adcock as a similarly situated employee who received more favorable treatment. Plaintiff contends that Adcock talked disparagingly of patients outside of their presence, but received no discipline for her behavior. (Pl.'s Br. 21.) Because Plaintiff has not pointed to evidence that Hulse was aware of Adcock's conduct or that Adcock engaged in an inappropriate interaction with a patient, we find that Plaintiff has failed to show that Adcock is a relevant comparator.

In sum, we conclude that Plaintiff has failed to present a prima facie case to support an inference of discrimination or otherwise establish that she was treated less favorably than other "similarly situated" co-workers. Nevertheless, even if Plaintiff were able to meet this burden, a complete McDonnell Douglas analysis demonstrates that she has failed to adduce sufficient evidence to suggest a finding of pretext. This issue is examined below.

2.     ***Legitimate, Nondiscriminatory Reason***

If Plaintiff had established a prima facie case of discrimination, a proposition we reject, the burden of production shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their decision. At this stage, Defendants' burden is "relatively light" and they need only "introduc[e] evidence which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Defendants assert that Plaintiff was terminated for: (1) violation of the standards of professional conduct; and (2) offensive and inappropriate behavior to a patient. Specifically, Hulse testified that she witnessed an interaction between Plaintiff and a patient, and perceived that Plaintiff acted in a demeaning way towards the patient and continued to do so after Hulse directed her to stop. Hulse further testified that the patient was visibly upset, shaking and had been crying. (Hulse Dep. 19:16-21:17, 65:19-25, Defs.' Statement of Undisputed Facts Ex. E.) Defendants argue that these infractions, coupled with the fact that Plaintiff was at a "Second Written Warning" level, and in light of the severity of the incident with the patient, warranted Plaintiff's termination. We find that Defendants' non-discriminatory reasons are clearly sufficient to satisfy their burden.

3.      *Pretext*

To survive summary judgment, Plaintiff must point to evidence from which a fact-finder could reasonably conclude that Defendants' proffered reasons are pretextual. Fuentes, 32 F.3d at 763. This can be accomplished by adducing evidence from which a fact-finder could: (1) disbelieve the employer's articulated reasons; or (2) believe that discrimination was more likely than not a motivating or determinative cause of the employer's action. Id. at 764.

Under the first approach of the Fuentes analysis, a plaintiff must "present evidence contradicting the core facts put forth by the employer as the legitimate reasons for its decision." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005). In other words, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765. In evaluating the employer's reasons, our focus is upon whether the reasons honestly motivated the decision at issue, not whether the reasons are factually accurate. See Stahlnecker v. Sears, 2009 WL 661927, at *6 (E.D. Pa. Mar. 11, 2009). Further, in reviewing whether a plaintiff has established pretext, a court must consider "the totality of the evidence," and not "the strength of each individual argument." Bray v. Marriott Hotels, 110 F.3d 986, 991 (3d Cir. 1997).

The second prong of the Fuentes test examines whether a plaintiff has evidence that suggests unlawful discrimination was more likely than not a motivating or determining factor in the employer's decision. The plaintiff must do more than show that the employer's decision was wrong or mistaken, but must demonstrate that the employer acted with discriminatory animus. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 283 (3d Cir. 2001). The plaintiff can satisfy her

burden by pointing to evidence "that the employer has previously discriminated against her, that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, 142 F.3d 639, 644-45 (3d Cir. 1998). Where a plaintiff presents evidence of similarly situated non-class members to sustain her burden at the pretext stage, she must show with some specificity that the comparators were more favorably treated. Id. at 646. In the context of employee discipline, "[a] violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated also violated the policy with no adverse consequence." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 322 (3d Cir. 2000).

In support of a finding of pretext, Plaintiff first contends that Defendants' stated reasons for her firing—namely, violation of the standards of professional conduct and offensive and inappropriate behavior to a patient—are completely inconsistent with Plaintiff's performance reviews, which indicate that Plaintiff had excellent customer service skills and acted in a professional manner. (Pl.'s Br. 22-23, 28.) Considering the totality of the circumstances, including Plaintiff's "Coaching Record," which she received after a doctor reported that she had addressed a colleague in a rude tone and derogatory manner, we find that a reasonable juror would be unable to conclude that Plaintiff's positive performance reviews reflect a contradiction that suggests that Defendants' reasons for termination were pretextual. Indeed, the fact that Plaintiff's supervisors had lauded her customer service skills in the past does not, in itself, preclude a finding that Plaintiff's conduct towards a particular patient on September 8, 2008 was severe enough to warrant termination. See Kautz v. Met-Pro Corp., 412 F.3d 463, 474 (3d Cir. 2005) ("The attempt to use past positive

performance reviews to show that more recent criticism was pretextual fails as a matter of law.").

Plaintiff further claims that the September 8, 2008 incident was an isolated event that did not warrant termination, and thus Defendants' reliance on the incident to support their decision was pretextual. In support of this argument, Plaintiff points to the deposition testimony of her co-worker, Quiana Mack, who testified that Plaintiff had a kind and professional demeanor with patients.[17] (Pl.'s Br. 23-24.)

A co-worker's opinion is not alone sufficient to establish that the reasons for an employer's adverse action were pretextual. See Martin v. Health Care & Ret. Corp., 67 Fed. Appx. 109, 113-14 (3d Cir. 2003) (citing Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 235 (4th Cir. 1991) (finding that co-workers' opinions that the allegations against plaintiff were not consistent with her typical demeanor were insufficient to show that the decision-makers were lying in their belief that plaintiff mishandled certain incidents). Given that Plaintiff has not produced evidence that Mack witnessed the September 8, 2008 incident, (See Oliver Dep. 134:11-15), and in light of the fact that CPUP's corrective discipline policy expressly permits termination for incidents of misconduct that harm patients, (Defs.' Statement of Undisputed Facts ¶ 16), a reasonable juror would be unable to conclude that Mack's testimony supports a finding of pretext. Further, Plaintiff's subjective belief

---

[17] We note that Plaintiff also points to statements of a former patient, Lillian Johnson, and co-workers, Quiana Mack and Sameerah Rahman. However, these statements are hearsay and cannot be considered for purposes of summary judgment. See Pollino v. City of Phila., 2005 WL 372105, at *7 (E.D. Pa. Feb. 15, 2005) (finding that unsworn statement was "nothing more than hearsay that would not be admitted at trial for substantive purposes" and that "[i]nadmissible hearsay is not considered when reviewing a motion for summary judgment"). Further, Plaintiff argues that Defendants' reasons were inconsistent and contradictory with the testimony of co-workers, Angela Haswell and Artavia Smith, without indicating the exact testimony to which she refers. This is insufficient to satisfy Plaintiff's burden. Nevertheless, to the extent that Plaintiff has pointed to the testimony of Smith in support of an argument that Hulse falsely accused her of inappropriate behavior, Plaintiff's claim would nevertheless fail because she did not satisfy her prima facie burden.

that termination was not warranted under the circumstances is insufficient to show pretext because the employer's belief governs. See Martin, 67 Fed. Appx. at 113 ("An employer's decision that an incident is serious enough to warrant termination rather than a less severe punishment does not show that the reason for termination is pretextual."); see also Gibson v. Sharon Regional Hosp. Sys., 2011 WL 1044657, at *16 (W.D. Pa. Mar. 18, 2011).

We also reject Plaintiff's contention that the June 23, 2008 email from Loren Gleason to Amanda Buckley in Human Resources, and in which Lori Hulse was carbon copied, provides a reasonable inference that Defendants' reasons are pretextual. Plaintiff contends that the email, which noted that Plaintiff called out sick and stated that Gleason wanted to work towards terminating Plaintiff "for causing other good employees in the office to look for jobs," is evidence that Plaintiff's termination was pre-arranged, or that Plaintiff was targeted for termination prior to the September 8, 2008 incident. Plaintiff further argues that the reasons for termination indicated by Gleason are without basis. (Pl.'s Br. 25-26; Buckley Dep. Ex. 2.)

Defendants respond that the email was written months before Plaintiff's termination, which was for a reason unrelated to the absence referenced in the email, and that Gleason had no role in the termination decision as she was no longer in the Department of Surgery. Further, Defendants contend that Plaintiff has pointed to no evidence to suggest that Gleason had any race-based motivation for sending the email. (Defs.' Reply Br. 8.)

"Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). Regardless, even if we were to consider the email relevant, we are unable to conclude that it renders

Defendants' stated reasons for terminating Plaintiff so implausible, inconsistent, incoherent or contradictory, such that they should be disbelieved.

Finally, Plaintiff contends that Defendants' reasons for terminating her were pretextual because Hulse handled similar situations with white employees differently than how she handled the incident with Plaintiff. Specifically, Plaintiff claims that similarly situated white employees—Saraceno, Haswell and Adcock— were treated more favorably in that, unlike Plaintiff, they were not disciplined or terminated after engaging in interactions that upset or disparaged patients. (Oliver Dep. 249-53.) As we have already determined in our discussion of Plaintiff's prima facie case, however, none of these individuals are similarly situated to Plaintiff. Thus, Defendants' treatment of these individuals is irrelevant and insufficient to establish pretext.

Considering the totality of the evidence and Plaintiff's argument as a whole, we conclude that Plaintiff has not presented sufficient evidence from which a fact-finder could disbelieve Defendants' articulated reasons or believe that discrimination was more likely than not a motivating or determinative cause of Defendants' action.

## C.    Disability Discrimination Claim - Disparate Treatment

The ADA prohibits employers from discriminating against an employee on the basis of disability. 42 U.S.C. § 12112. In cases where a plaintiff has not offered direct evidence of discrimination, the McDonnell Douglas framework applies.[18] Dawley v. Erie Indem. Co.,100 Fed.

---

[18] While Plaintiff asserts that there is direct evidence of discrimination based on her disability, she has not provided sufficient evidence to support her claim. Plaintiff points only to her belief that Bryant viewed her as "the weakest link" when she returned from her colon cancer surgery. (Pl.'s Br. 29.) Even considering this as background evidence and assuming that the belief is supported by the record, it is simply not direct evidence that Plaintiff was terminated because of her disability. See Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 786 (3d Cir. 2007) ("Only the

Appx. 877, 880 (3d Cir. 2004).

> 1. ***Prima Facie Case of Discrimination***

To establish a <u>prima facie</u> case of disability discrimination under the ADA, a plaintiff must demonstrate: (1) that she is a disabled person within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that she has suffered an otherwise adverse employment decision as a result of discrimination. <u>Gaul v. Lucent Techs.</u>, 134 F.3d 576, 580 (3d Cir. 1998). Defendants do not contest that Plaintiff can satisfy the first two elements, but argue that Plaintiff is unable to demonstrate that she suffered any adverse employment actions as a result of disability discrimination.

Plaintiff counters that there are genuine issues of fact as to whether Defendants terminated her because of her disability. She asserts that, after her diagnosis, her supervisors "began to treat [her] differently." Plaintiff points to evidence that Bryant, on one occasion, commented that she was slow and indicated that Plaintiff should think about looking into the University for another job.[19] Plaintiff further argues that Gleason's June 23, 2008 email to Human Resources, discussed in greater detail in Part III.A., <u>supra</u>, is evidence of disability-based discrimination. (Pl.'s Br. 27-28; Oliver Dep. 224:24-225:21, 262:15-22.)

Nevertheless, Plaintiff does not explain, nor is it clear from the briefings, how this evidence

---

most blatant [conduct] whose intent could be nothing other than to discriminate constitute[s] direct evidence.").

[19] While we have concluded that Plaintiff's claims against Bryant are time-barred, we may nevertheless consider them as background evidence. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002).

relates to Hulse's decision to terminate Plaintiff. Indeed, Plaintiff has brought forth no evidence to suggest that Hulse's action was motivated by Plaintiff's disability. Thus, because Plaintiff has failed to offer evidence supporting an inference of a causal connection between her disability and the adverse employment action, we conclude that she has not satisfied her prima facie burden.

### 2. *Legitimate, Nondiscriminatory Reason*

Even if Plaintiff had established a prima facie case, Defendants' preferred reasons for terminating Plaintiff satisfy their McDonnell Douglas burden. Thus, we will proceed with Plaintiff's evidence of pretext.

### 3. *Pretext*

Plaintiff raises the same grounds of pretext here as she did in her race discrimination claim. (Pl.'s Br. 28.) For the same reasons discussed in Part III.B.3, supra, we find that Plaintiff has not presented sufficient evidence to overcome summary judgment.

### D. Age Discrimination Claim

The ADEA states that it "shall be unlawful for employer to . . . discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age

discrimination, a plaintiff must show that she: (1) is over 40; (2) is qualified for the position in

question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently

younger person to create an inference of age discrimination. Sempier v. Johnson & Higgins, 45 F.3d

724, 728 (3d Cir. 1995).

Defendants assert, among other things, that Plaintiff has failed to meet her prima facie

burden and, as such, her age discrimination claim fails. (Defs.' Br. 6-8.) Plaintiff concedes that summary judgment is appropriate as to this claim. (Pl.'s Br. 1.) Thus, Defendant's motion with respect to Plaintiff's ADEA claim will be granted.

### E.      Hostile Work Environment Claims

In her response to Defendants' motion for summary judgment, Plaintiff also asserts hostile work environment claims in violation of Title VII and the ADA. We first address Defendants' contention that the claims are barred for failure to exhaust administrative remedies and failure to plead the allegations in the complaint. (Reply Br. 2, 8.)

### 1.      *Whether Plaintiff Appropriately Raised Hostile Work Environment Claims*

### A.      Exhaustion of Administrative Remedies

Before a plaintiff may file a discrimination claim in federal court, she must file a timely complaint with the PHRC or EEOC, and then wait as the commission attempts to mediate the dispute without litigation. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). The relevant inquiry in determining whether claims have been administratively exhausted is "whether the acts alleged in the subsequent [discrimination] suit are fairly within the scope of the prior [PHRC or] EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters, 729 F.2d at 237). Put another way, "a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the [PHRC or] EEOC would have encompassed the new claims." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984); Webb v. City of Phila., 2007 WL 210405, at *2 (E.D. Pa. Jan. 23, 2007). The scope of the complaint should be liberally

construed in that charges are "most often drafted by one who is not well versed in the art of legal description." <u>Hicks v. ABT Assocs., Inc.</u>, 572 F.2d 960, 965 (3d Cir. 1978).

In her PHRC complaint, Plaintiff alleges that "every action" she took resulted in reprimand while white employees were treated more favorably. (Defs.' Statement of Undisputed Facts Ex. KK, PHRC Compl, at ¶ 14.) Viewing this allegation in a light most favorable to the Plaintiff, we find that these facts should have provided notice to the PHRC that the race discrimination alleged was ongoing. Thus, Plaintiff has sufficiently exhausted her Title VII hostile work environment claim. <u>See, e.g.</u>, <u>Weems v. Kehe Food Distribs., Inc.</u>, 804 F. Supp. 2d 339, 342 (E.D. Pa. 2011) (finding that plaintiff exhausted his administrative remedies as to a claim of hostile work environment where he alleged in his charge of discrimination that he was discriminated against throughout the period of his employment).

However, even construing her PHRC complaint liberally, we cannot conclude that an ADA hostile work environment claim was within the scope of Plaintiff's complaint. In her charge, Plaintiff asserts that one of her co-workers accessed information about her cancer diagnosis in violation of the Health Insurance Portability and Accountability Act ("HIPPA") and then informed the entire department. She further claims that her new supervisor, Lori Hulse, terminated her after learning about her cancer diagnosis and because she may have been trying to protect Defendants from a lawsuit regarding the alleged HIPPA violation. (Defs.' Statement of Undisputed Facts Ex. KK, PHRC Compl, at ¶¶ 27, 33.) Such allegations are insufficient to provide notice to the PHRC that its investigation should encompass a hostile work environment claim. Thus, this claim is barred for failure to exhaust administrative remedies.

### B.    Sufficiency of the Pleadings

Defendants next argue that Plaintiff's hostile work environment claims should be dismissed because she failed to plead these counts in her federal complaint.  (Defs.' Reply Br. 2, 8.)  Plaintiff responds that her complaint included specific allegations of hostile work environment/harassment to put Defendants on notice of her claims.  (Pl.'s Sur-Reply Br. 7-8.)

While a plaintiff need not explicitly use the phrase "hostile work environment" in her complaint, the allegations must nonetheless sufficiently state such a claim.  Glasgow v. Veolia Water North Am. Operating Servs., LLC, 2010 WL 3780966, at *6 (Sept. 21, 2010 D. Virgin Islands).  Viewing the complaint in a light most favorable to Plaintiff, we find that Plaintiff's specific allegations—harassment and/or discrimination by Bryant, Hulse and Maratea and the basis for that harassment and/or discrimination—could allege a pattern of discrimination and harassment based on race.  (See Compl. ¶ 45.)  Thus, her federal complaint sufficiently states a Title VII hostile work environment claim.  Nevertheless, because Plaintiff's allegations do not demonstrate a practice of discrimination or harassment based on disability, we conclude that Plaintiff's ADA hostile work environment claim should be dismissed.

### 2.    *Whether Plaintiff's Hostile Work Environment Claims Have Merit*

### A.    Race-Based Hostile Work Environment Claim

Racial harassment that creates an abusive and hostile work environment is actionable under Title VII.  Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986).  To establish a racially hostile work environment, a plaintiff must prove that: (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally

affected the employee; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. <u>Griffin v. Harrisburg Prop. Servs., Inc.</u>, 421 Fed. Appx. 204, 207 (3d Cir. 2011). No single factor is dispositive in a hostile work environment claim. Rather, Title VII is violated when discrimination is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).

In support of the first element of her hostile work environment claim, Plaintiff argues that she was intentionally discriminated on the basis of race in that: (1) Iris Bryant treated white employees more favorably than African American employees and/or there was racial polarization in the office; (2) she suffered many instances of racially disparate treatment during her employment, including receiving verbal and written reprimands for eating at the front desk and occasionally coming in late and/or calling out sick, as well as receiving post-it notes and being monitored by her co-workers for lateness; (3) her co-worker, Shannon Maratea, accessed her medical records and history without authorization; (4) Bryant failed to investigate or report Maratea's conduct to Human Resources; and (5) Human Resources failed to investigate the conduct.

As discussed previously, all of Plaintiff's allegations against Bryant are time-barred. Thus, we may only consider the allegations regarding Shannon Maratea and Human Resources' efforts to investigate her conduct.[20] Because Plaintiff has not presented any evidence from which a juror could infer that Maratea or Buckley, the Human Resources Director, acted with racial animus, and because

---

[20] While Defendants only argued that Bryant's actions were time-barred, we note that the claims regarding Maratea and Human Resources also appear to have occurred outside of the limitations period. Because Plaintiff has not shown evidence that such actions were part of a continuing practice, any conduct by Maratea and Human Resources is also likely barred by the statute of limitations and thus cannot serve as a basis for Plaintiff's claim.

the mere fact that those individuals are white is insufficient to demonstrate such intent, her Title VII hostile work environment claim fails. See Tucker v. Merck & Co., 131 Fed. Appx. 852, 859 (3d Cir. 2005) (concluding that plaintiff's hostile work environment claim failed as a matter of law and noting that he did not "cite a single incident involving the utterance of a racial epithet, the use of a racist symbol, or any direct comment concerning race," he did not show that the incidents alleged were linked with conduct regarding race, and he did not produce any evidence that any actions were racially motivated).

### B.      Disability-Based Hostile Work Environment Claim

A hostile work environment claim based on disability requires a showing that: (1) the plaintiff is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) respondeat superior liability. Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999).

Here, Plaintiff points solely to harassment allegedly perpetrated by Bryant after Plaintiff returned from her colon cancer surgery. (Pl.'s Br. 29-30.) Because the allegations against Bryant are time-barred, this claim also fails.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted, and Plaintiff's claims shall be dismissed. An appropriate Order follows.